Boro v. State.

FRANK BORO ET AL. V. STATE OF NEBRASKA.

FILED FEBRUARY 13, 1924. No. 23357.

1. **Criminal Law: EVIDENCE UNLAWFULLY OBTAINED.** "Where articles or information are offered in evidence, which are pertinent to the issue, the court will not exclude them because they may have been obtained in an irregular or illegal manner." *Billings v. State,* 109 Neb. 596.

2. Evidence examined, and *held* sufficient to sustain a verdict.

ERROR to the district court for Perkins county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*Beveridge & Spittler,* for plaintiffs in error.

*O. S. Spillman, Attorney General,* and *Lee Basye, contra.*

Heard before MORRISSEY, C. J., DAY, LETTON and ROSE, JJ., REDICK, District Judge.

REDICK, District Judge.

Plaintiffs in error, Boro and Snyder, were charged and convicted of having in their possession mash being used in the manufacture of intoxicating liquor, and bring the case here for review.

The first contention of the defendants relates to the reception in evidence by the trial court of the mash and other articles taken from the farm of one of the defendants without a search warrant. The evidence seems to establish that defendant Boro consented to the search, but, however this may be, the question has been settled adversely to the defendant in the case of *Billings v. State,* 109 Neb. 596.

Defendants next urge that there was error in instruction No. 8, given by the court, in which the jury were told, "if defendants below did unlawfully have in their possession mash used in the process of manufacturing intoxicating liquor," etc., they might find the defendants guilty; the point being that the court should have used the language of the statute "mash being used." We think, however, there is no substantial difference between the two expressions and the jury could not have been misled.

Finally, it is contended that the evidence is insufficient to support the verdict. The officers found on the farm of defendant Boro a boiler and some milk cans containing a liquid which, upon being analyzed, showed an alcohol content of 16.1 per cent., and which defendant admitted had been taken that morning from the farm of one Cromwell in an adjoining county. It was in the pursuit of Cromwell as a violator of the liquor statutes that the sheriff came upon the defendants and discovered the mash in question. Defendant claimed he got it for the purpose of feeding it to his hogs. There was evidence upon the part of the state that when the mash was discovered defendant said, "Well, Mr. Klinck (the sheriff), you have got me; I might as well give up; that is the mash," and some other language tending to show an admission of the unlawful purpose for which the mash was kept. Defendant denied these statements, but the sheriff's evidence was corroborated by that of his son, Hoyt Klinck, and we think the evidence was sufficient to submit to the jury the question of defendant Boro's guilt.

With reference to defendant Snyder, it is contended that the evidence is insufficient to connect him with the possession of the mash on the Boro place. It was shown by the state that, upon the evening of the day in which the mash had been taken to the Boro farm, the sheriff and his party met the two defendants coming from Grant at a point about ten or eleven miles from the Boro place, in Boro's car; that at the place of meeting was an abandoned Ford car which bore evidence of having been recently used for the trans-

portation of mash, quantities of it being present on the rear seat and on the floor of the car. Snyder admitted that the car belonged to him, but denied that he had used it that day or had ever been to the Cromwell place. The sheriff, one of the state's witnesses, testified that on the return to town from the Boro farm Snyder said, "We have got this on shares; we were going to divide the profit." Snyder denied making any such statement, but we think the evidence was sufficient to present to the jury the question of Snyder's connection with the mash. If he and Boro were interested in a joint undertaking to make a profit out of the sale of the mash, the possession of one of the parties was the possession of both. The mere physical location of an article of personalty is not conclusive upon the question of possession, but wherever situated it is deemed in law to be in the possession of the person entitled thereto, and especially so where the actual custody is in the possession of the joint owner. We are of the opinion that the evidence was sufficient to sustain the verdict as to each defendant, and the judgment is

AFFIRMED.